IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

CINCOM SYSTEMS, INC.,            :     Case No. 1:20-cv-83

                     :

            Plaintiff,         :     Judge Matthew W. McFarland

                     :

        v.                :

                     :

LABWARE, INC.,               :

                     :

            Defendant.      :

---

## ORDER AND OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 83), Plaintiff's Motion to Exclude Expert Testimony of Benjamin Goldberg (Doc. 85), Plaintiff's Motion to Exclude Expert Testimony of Daniel McGavock (Doc. 86), Plaintiff's Motion in Limine to Exclude Defendant's Use of Plaintiff's Virtual Smalltalk Enterprise 2000 Manuals (Doc. 87), Plaintiff's Motion to Exclude Testimony and Evidence for Violation of the Source Code Inspection Protocol (Doc. 88), and Plaintiff's Motion for Partial Summary Judgment (Doc. 92).[1] Each motion has been fully briefed. (*See* Docs. 98-109.) Thus, these matters are ripe for review.

For the reasons detailed below, Plaintiff's motions to exclude expert testimony and evidence (Docs. 85, 86, 87, and 88) are **DENIED**, Defendant's Motion for Summary

---

[1] Defendant requests oral arguments on both motions for summary judgment. (*See* Defendant's Motion for Summary Judgment, Doc. 83, Pg. ID 9341; Defendant's Response to Plaintiff's Motion for Summary Judgment, Doc. 102, Pg. ID 11691.) The undersigned finds that oral arguments are not "essential to the fair resolution" of these motions. *See* S.D. Ohio Civ. R. 7.1(b)(2). Accordingly, Defendant's requests are denied.

Judgment (Doc. 83) is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment

(Doc. 92) is **DENIED**.

## FACTS

Plaintiff Cincom Systems, Inc. is a software development company. (*See* Fortman

Dep., Doc. 52, Pg. ID 528; Bish Dep., Doc. 53, Pg. ID 1584.) Defendant LabWare, Inc. is a

company that distributes laboratory information management systems ("LIMS").

(Goldberg Report, Doc. 62-1, Pg. ID 4099-4100.) The controversy here stems from

Defendant's allegedly unauthorized use of Plaintiff's software in developing LIMS. (*See*

Compl., Doc. 1.)

### I.  The Software

Smalltalk is a computer programming language invented in the 1970s. (SmallTalk

White Paper, Doc. 68-10, Pg. ID 5613.) Visual Smalltalk Enterprise ("VSE") is a software

program based on Smalltalk. (*See* Buck Report, Doc. 56-1, Pg. ID 2720.) VSE operates

within a "virtual machine" ("VM"), which is software that runs the Smalltalk code. (*See*

Bates Dep., Doc. 68, Pg. ID 5479.)

VSE has had multiple releases and brand name changes over the years. (Plaintiff's

Interrog. Response, Doc. 84-1, Pg. ID 9389.) Relevant here, Digitalk, Inc., which owned

VSE at the time, released Smalltalk/V Version 1.3 ("Smalltalk Version 1.3") in 1991. (*See*

*id*.)

### II.  VSE-Related Purchases and Acquisitions

In 1992, Labware Holdings, formerly known as LabWare Inc., purchased VSE

licenses from Digitalk. (*See* First Kershner Dep., Doc. 71, Pg. ID 6328-29, 6361.) Digitalk

became known as ParcPlace-Digitalk Inc., which continued selling VSE products. (*Id.* at Pg. ID 6329.) ParcPlace-Digitalk released Version 3.1 of VSE in 1995. (*See* Plaintiff's Interrog. Response, Doc. 53-2, Pg. ID 1496.) LabWare Holdings purchased licenses for Version 3.1 in 1998. (*See* First Kershner Dep., Doc. 71, Pg. ID 6340, 6364.)

The VSE licenses that LabWare Holdings purchased from ParcPlace-Digitalk, Inc. included a printed, software license known as the "Shrinkwrap License." (Shrinkwrap License, Doc. 71-21, Pg. ID 6603.) The Shrinkwrap License granted LabWare Holdings the right to (1) "provide the [VSE] to a single developer solely for use in developing end-user software applications," (2) "transfer the [VSE] from one developer to another, or to another individual or entity, provided that the transferring user permanently cease use of [the VSE] and destroys all copies," and (3) "reproduce and distribute executable files created by using the [VSE]." (*Id.*) The Shrinkwrap License prohibited LabWare Holdings from reverse engineering or distributing VSE. (*Id.*)

LabWare Holdings used VSE to develop a product called "LabWare LIMS." (Goldberg Report, Doc. 62-1, Pg. ID 4099-4100.) LabWare LIMS is mainly used by pharmaceutical and energy companies to manage laboratory workflows and data. (*Id.*) Defendant, a subsidiary of LabWare Holdings, focuses on the sale of LIMS products in the United States. (First Kershner Dep., Doc. 71, Pg. ID 6361-62; Second Kershner Dep., Doc. 77, Pg. ID 8009-10; Certificate of Incorporation, Doc. 84-5, Pg. ID 9530.)

Shortly after LabWare Holdings' purchase, ParcPlace-Digitalk became known as ObjectShare, Inc. (*See* Buck Report, Doc. 56-1, Pg. ID 2726-27.) In 1999, ObjectShare sold its rights to VSE to Seagull Software, Inc. (*See* Ayers Dep., Doc. 53, Pg. ID 1250-52; April

1999 Asset Purchase Agreement, Doc. 84-2, Pg. ID 9439.) In return for the sale, Seagull

licensed back limited, exclusive rights in VSE to ObjectShare. (Ayers Dep., Doc. 53, Pg.

ID 1250-52.) These exclusive rights were as follows:

> a perpetual, world-wide, royalty-free, non-transferable, limited license to .
> . . (a) market and license the [VSE] Software directly or indirectly through
> distributors to third party end-users for the express purpose of building
> Smalltalk-based applications, (b) perform maintenance modifications, bug-
> fixing, error fixing and related support services for its then current licensees
> . . . , and (c) sub-license the [VSE] Software to third parties for the express
> purpose of providing Support Services on behalf of ObjectShare.

(Software License Agreement, Doc. 54-1, Pg. ID 1873.)

Later that year, ObjectShare sold its rights in VSE to Plaintiff. (*See* Asset Purchase

Agreement, Doc. 65-3.) Among the assets that changed hands were two Smalltalk-related

copyrights: U.S. Copyright Registration No. TX 3-733-100 ("'100 Registration") and U.S.

Copyright Registration No. TX-1-564-488 ("'488 Registration"). (*See id*. at Pg. ID 4769,

4794, 4806-07.) After its purchase, Plaintiff abandoned the Shrinkwrap License and

created a new licensing model. (Ayers Dep., Doc. 53, Pg. ID 1324-26.) Under the new

model, VSE licensees paid for their license through annual subscription fees and

percentages of revenue derived from selling VSE-based applications. (*Id*.)

The Court has limited information about the '100 Registration. The parties

provided a single-page document referring to the registration in the United States

Copyright Office Public Catalog. ('100 Registration, Doc. 84-8, Pg. ID 9541.) The registered

work's title is "Smalltalk/V PM (version 1.3)." (*Id*.) The document identifies the "type of

work" as a "computer file" and clarifies in its "description" that it covers a "computer

program." (*Id*.) It adds that it is related to two previous registrations and provides that

4

the basis of the '100 Registration is "New Matter: rev. & supplemental text." (*Id.*)

In 2006, LabWare Holdings bought a license to the source code for VSE's VM from Seagull. (*See* Distribution and Source Code License Agreement, Doc. 71-20.) This license included "a nontransferable, nonassignable, nonexclusive, worldwide right and license to access, store, run, display, load, use, produce, reproduce, copy, translate, modify, or adapt the Source Code solely as necessary to support and maintain the Software for use with [LabWare] Products." (*Id.* at Pg. ID 6596.) LabWare then "extensive[ly]" modified the VM source code ("Modified VM Source Code"). (Goldberg Report, Doc. 62-1, Pg. ID 4122-23.) It did so to "fix errors and make improvements to the VM" to use in its LIMS products. (*Id.*)

## III.    Plaintiff's Discovery of Defendant's Use of VSE

In April 2014, executives working for Plaintiff became aware that a former employee had begun working for Defendant. (*See* Employee Email, Doc. 53-5, Pg. ID 1511.) Plaintiff's Managing Director of Smalltalk, Brian Bish, forwarded email correspondence on this discovery to Jason Ayers, Plaintiff's European Sales Director of Smalltalk. (*Id.* at Pg. ID 1509-1511.) In that email, Bish noted that Plaintiff had "exclusive distribution and support rights for VSE," but that "[f]rom everything [he had] been able to find, LabWare [was] using Smalltalk V." (*Id.* at Pg. ID 1509) He noted that there was "no record" of Defendant "being a VSE customer on a [Plaintiff] contract." (*Id.*)

In response, Ayers questioned how Defendant "got hold of the VM," noting that there was "no way" Defendant had the VM source code from a previous Smalltalk or VSE license. (Employee Emails, Doc. 53-5, Pg. ID 1509.) He added that Defendant got the

5

source code either by decompiling it or buying it from Seagull, who did "not have the rights to sell VSE in any form." (*Id.*) Bish responded that it was "[p]robably difficult to go after LabWare" and took no immediate action against Labware Holdings or Defendant. (*Id.*) Plaintiff investigated the employee for potential impropriety and found no issues. (*See* Ayers Dep., Doc. 53, Pg. ID 1269-71.)

**PROCEDURAL POSTURE**

On January 30, 2020, Plaintiff sued Defendant, bringing claims of copyright infringement under 17 U.S.C. § 101, et seq., misappropriation of trade secrets under Ohio's Uniform Trade Secrets Act ("OUTSA"), conversion, and unjust enrichment. (Compl., Doc. 1, ¶¶ 18-38.) This Court dismissed Plaintiff's conversion and unjust enrichment claims on February 22, 2021. (Order on Motion to Dismiss, Doc. 14.) Defendant now moves for summary judgment on the remaining claims. (Defendant's Motion for Summary Judgment, Doc. 83.) Plaintiff also moves for partial summary judgment and to exclude certain expert testimony and evidence. (Plaintiff's Motion for Summary Judgment, Doc. 92; Motion to Exclude Goldberg, Doc. 85; Motion to Exclude McGavock, Doc. 86; Motion to Exclude VSE Manuals, Doc. 87; Motion to Exclude Source Code Violation, Doc. 88.)

**LAW & ANALYSIS**

The Court will first address Plaintiff's evidentiary motions before proceeding to the parties' motions for summary judgment.

**I. Evidentiary Motions**

The purpose of a motion in limine is to narrow evidentiary issues for trial and

6

exclude inadmissible evidence. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 560-61 (6th Cir. 2013). "Unless a party proves that the evidence is clearly inadmissible—a demanding requirement—'evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.'" *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Products Liab. Litig.*, 505 F. Supp. 3d 770, 774 (S.D. Ohio 2020) (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)).

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

In determining whether to admit or exclude proffered expert testimony, the Court must act as a "gatekeeper" to ensure that the expert is duly qualified to render an expert opinion, that his testimony will assist the trier of fact, and that the proffered testimony is reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993). The Supreme Court has provided a non-exhaustive list of factors that courts may consider in assessing reliability: (1) whether a theory or technique can be (and has been) tested; (2) whether the

theory or technique has faced peer review and publication; (3) whether the technique has a high known or potential rate of error; and (4) whether the technique enjoys general acceptance within the relevant scientific, technical, or other specialized community. *Id.* at 593-94; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-50 (1999). Whether the court applies a particular *Daubert* factor "depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 150 (citation omitted).

That said, "rejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citations omitted) ("[M]ere weaknesses in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on its admissibility.").

Plaintiff moves to exclude the expert testimonies of Benjamin Goldberg and Daniel McGavock. (*See* Motion to Exclude Goldberg, Doc. 85; Motion to Exclude McGavock, Doc. 86). Plaintiff also seeks to exclude evidence related to certain VSE manuals, as well as evidence related to the Modified VM Source Code. (*See* Motion to Exclude VSE Manuals, Doc. 87; Motion to Exclude Source Code, Doc. 88.) The Court will consider each in turn.

### a. Benjamin Goldberg

Plaintiff first seeks to exclude the expert testimony of Benjamin Goldberg, Ph.D. (*See* Motion to Exclude Goldberg, Doc. 85.) Goldberg is a computer scientist who Defendant hired to respond to Plaintiff's expert reports and trade secret allegations, as

well as to analyze Defendant's LIMS product. (Goldberg Report, Doc. 96-1, Pg. ID 11343.) Plaintiff argues that Goldberg should be excluded as an expert because he is unqualified and his opinions are unreliable. (Motion to Exclude Goldberg, Doc. 85-1, Pg. ID 9560-73.) Plaintiff further argues that Goldberg's opinions related to trade secrets are generally inadmissible. (*Id.* at Pg. ID 9573-74.) The Court will consider each argument in turn.

### i. Qualifications

Plaintiff contends that Goldberg is not qualified to give expert testimony because he lacks experience or specialized knowledge in VSE and the Smalltalk programming language. (Motion to Exclude Goldberg, Doc. 85-1, Pg. ID 9561.) Courts "take a liberal view" of what experience qualifies a witness as an expert. *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2015). "Whether a proposed expert's experience is sufficient to qualify the expert to offer an opinion on a particular subject depends on the nature and extent of that experience." *Id.* (quotation omitted).

Goldberg's history and experiences show that he is qualified to give expert testimony here. Goldberg has several advanced degrees, including a doctorate in computer science from Yale University. (Goldberg Resume, Doc. 96-7, Pg. ID 11509). He has taught computer science at New York University since 1987, developed computer programming courses for undergraduate and graduate level programs, published several works on computer programming, and obtained several research grants related to computer programming. (*Id.* at Pg. ID 11511-15.) Although Goldberg has limited to no experience working directly with Smalltalk or VSE, he has extensive experience in the field of computer science. Consequently, his lack of familiarity with VSE speaks to the

9

weight and credibility of his testimony, not his qualifications. *See, e.g.*, *Wellogix, Inc v. Accenture, L.L.P.*, 716 F.3d 867, 881-82 (5th Cir. 2013) (affirming the admission of a computer scientist as an expert who initially lacked experience in the software at issue in the case). The Court thus concludes that Dr. Goldberg is qualified to give expert testimony here.

### ii. Reliability

Plaintiff next argues that Goldberg's opinions are not reliable for several reasons. (Motion to Exclude Goldberg, Doc. 85-1, Pg. ID 9565-9573.)

Plaintiff first argues that Goldberg's opinions are not reliable because Defendant's employees, not Goldberg himself, performed the code analyses in his report. (Motion to Exclude Goldberg, Doc. 85-1, Pg. ID 9567-68.) That said, an expert can "base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Goldberg testified that he designed the tests for his code analyses and supervised while Defendant's employees physically performed the tests. (*See* Goldberg Dep., Doc. 96, Pg. ID 11120.) In fact, Goldberg directed and oversaw every aspect of these analyses. (*See id.* at Pg. ID 11191). Goldberg therefore "personally observed" the relevant data that supported his opinion, thereby satisfying Rule 703. On top of that, Goldberg's opinion is not inherently unreliable just because Defendant's employees assisted in the code analysis used in his report. *See, e.g.*, *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 250 F. Supp. 3d 244, 256-57 (W.D. Ky. 2017) (Expert's report was reliable where expert did not personally conduct the testing but designed the testing protocol used by the plaintiff's employees.). Thus, Plaintiff's first

10

argument fails to show that Goldberg's opinions are unreliable.

Plaintiff also argues that Goldberg's opinions are not reliable because he failed to independently evaluate his sources. (Motion to Exclude Goldberg, Doc. 85-1, Pg. ID 9569-73.) Plaintiff challenges the "Materials Considered" list in Goldberg's report, which it maintains consists of documents supplied to Goldberg only by Defendant. (*Id*. at Pg. ID 9569-70; *see also* Goldberg Report, Doc. 96-7, Pg. ID 11516-19.) Plaintiff also argues that the report is unreliable because this list includes evidence that Goldberg did not actually review in his report. (*See* Motion to Exclude Goldberg, Doc. 85-1, Pg. ID 9569-73.)

That Goldberg included documents supplied by Defendant in his "Materials Considered" list does not make him unreliable. Federal Rule of Civil Procedure 26(a)(2)(B) requires a party to disclose all information provided to a testifying expert. *Reg'l Airport Auth. v. LFG, LLC*, 460 F.3d 697, 715 (6th Cir. 2006). So, Goldberg included those materials provided by Defendant in his "Materials Considered" list. (Goldberg Report, Doc. 96-7, Pg. ID 11516-19.) Goldberg makes clear that he considered other materials in addition to those supplied by Defendant, which are also listed in the "Materials Considered." (Goldberg Dep., Doc. 96, Pg. ID 11081; Goldberg Report, Doc. 96-7, Pg. ID 11516-19). In any event, Plaintiff cites no authority suggesting that an expert is prohibited from relying on materials provided to him by a particular party. (*See* Motion to Exclude Goldberg, Doc. 85.) So, Plaintiff's argument fails to show that Goldberg is unreliable.

Likewise, Goldberg's testimony is not unreliable because he included materials in his "Materials Considered" that he did not end up incorporating elsewhere in his report.

11

Courts in the Sixth Circuit have broadly construed the disclosure requirements in Rule 26(a)(2) to include anything that the expert received, even if the expert did not use all the materials to form his or her opinions. *See, e.g., In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, 2:18-md-2846, 2021 WL 2280657, at *2 (S.D. Ohio, June 4, 2021) (collecting cases). That Goldberg did not rely on all the materials provided to him in drafting his report is not a sufficient basis to conclude that his testimony is unreliable. *See id.* Thus, Plaintiff's arguments fail to show that Goldberg's testimony is unreliable.

Finally, Plaintiff challenges the reliability of Goldberg's opinion about accessing certain VSE manuals online. (Motion to Exclude Goldberg, Doc. 85-1, Pg. ID 9570-72.) Plaintiff maintains that Goldberg received a link to the manuals from Defendant, and that Goldberg simply copied that link into his report without independently checking its authenticity. (*Id.* at Pg. ID 9571-72.) But, Goldberg testified that he was "sure" that he independently accessed the website. (Goldberg Dep., Doc. 96, Pg. ID 11280.) And, he further references in his report that another witness accessed the manuals online. (Goldberg Report, Doc. 96-1, Pg. ID 11397.) Though Goldberg cannot recall specifics of his search (*see* Goldberg Dep., Doc. 96, Pg. ID 11280), this consideration goes to the weight of Goldberg's opinion, not its reliability. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529-30. Thus, Plaintiff's argument fails to show that Goldberg's testimony is unreliable.

### iii. Opinions on Trade Secrets

Plaintiff lastly contends that Goldberg's opinions on trade secrets should be excluded because they do not constitute expert testimony. (Motion to Exclude Goldberg, Doc. 85-1, Pg. ID 9573-74.) Specifically, Plaintiff seeks to exclude Goldberg's opinions that

certain features of VSE and Smalltalk are publicly available—and are thus not trade secrets—as impermissibly subjective opinions. (*Id.* at Pg. ID 9573.)

Plaintiff's argument is not well taken. Experts possess "wide latitude" to opine in their fields. *Daubert*, 509 U.S. at 592. Courts have recognized that programming experts may offer testimony on whether code was a trade secret and whether one party's software contained the other party's code. *See, e.g.*, *Wellogix*, 716 F.3d at 881-82. To be sure, Goldberg addresses the public availability of certain aspects of Smalltalk and VSE. (Goldberg Report, Doc. 96-1, Pg. ID 11379-80.) He does so as part of a larger discussion of Defendant's use of VSE and the VM, the licensure of the VM source code, and the availability of Plaintiff's purported trade secrets related to the software and code at issue. (*Id.* at Pg. ID 11379-94.) These analyses are within Goldberg's set of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. That said, any conclusion on whether the software or code constitutes a trade secret is ultimately a question reserved for the jury. *See Coda Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 565 F. Supp. 3d 978, 993 n.13 (N.D. Ohio 2021) ("To the extent [Defendant's] lengthy argument may be an assertion that none of [Plaintiff's] listed trade secrets actually *are* trade secrets because they were public knowledge, that too is a question for a fact-finder."). The Court will not exclude Goldberg's general discussion of Plaintiff's trade secrets in his report.

For these reasons, Plaintiff's request to exclude Goldberg's expert testimony must be denied.

**b. Daniel McGavock**

Plaintiff next seeks to exclude the expert testimony of Daniel McGavock,

13

Defendant's damages expert. (*See* Motion to Exclude McGavock, Doc. 86.) Plaintiff contends that McGavock's report includes impermissible narrative testimony and that he based his report on unreasonable hypothetical negotiations. (*Id.* at Pg. ID 9603.) The Court will consider each argument in turn.

### i. Narrative Testimony

Plaintiff first seeks to strike the "Case Background" section of McGavock's report, arguing that it is impermissible narrative testimony. (Motion to Exclude McGavock, Doc. 86-1, Pg. ID 9611-12.)

Experts are required to disclose the facts relied on to generate their reports. Fed. R. Civ. P. 26(a)(2)(B)(ii). That said, "[a]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Schall v. Suzuki Motor of Am., Inc.*, No. 4:14-CV-74, 2020 WL 1162193, at *5 (W.D. Ky. March 10, 2020) (quotation omitted). "To the extent such evidence is admissible, it is properly presented through percipient witnesses and documentary evidence." *Id.* (quotation omitted). "However, as opposed to providing a mere factual narrative, an expert is allowed to articulate the factual underpinning upon which he bases his opinion." *Id.* (cleaned up).

McGavock's "Case Background" section in his report is not impermissible narrative testimony. McGavock testified that he prepared the "Case Background" section to provide context for his conclusions related to damages. (McGavock Dep., Doc. 63, Pg. ID 4540-41.) Review of this section supports McGavock's testimony. In the "Case Background" section, McGavock lists several facts relevant to his analysis: the parties and

14

technology at issue, how the parties used said technology, Defendant's licensing history of VSE, and Plaintiff's asserted rights. (*See* McGavock Report, Doc. 65-1, Pg. ID 4612-30.) Using these facts, McGavock developed a hypothetical negotiation framework tailored to the rights at issue. (*Id.* at Pg. ID 4630-43.) Indeed, McGavock uses the "Case Background" section to present the facts he used to support his expert opinion, as required by Rule 26. Accordingly, the Court will not strike the "Case Background" section of McGavock's expert report.

### ii. Hypothetical Negotiation

Plaintiff also seeks to exclude McGavock's testimony because his damages estimation is based on a hypothetical negotiation rather than on the facts in the record. (Motion to Exclude McGavock, Doc. 86-1, Pg. ID 9612-16.) Plaintiff argues that its six percent standard royalty rate is the only gauge to measure damages, and McGavock's hypothetical negotiation is therefore not based in the record because it did not use that rate. (*Id.* at Pg. ID 9614-16.)

Plaintiff's argument is not well taken. While true that Plaintiff uses a six percent standard rate, Defendant notes that Plaintiff has agreed to other rates with other customers in the past. (Defendant's Response, Doc. 101, Pg. ID 11681; *see also* Bish Dep., Doc. 54, Pg. ID 1556; McGavock Report., Doc. 63-1, Pg. ID 4632-33.) McGavock references these other rates, as well as previous rates that Defendant had agreed to in other licensing agreements, to find what he considers to be a more appropriate licensing structure. (McGavock Dep., Doc. 63, Pg. ID 4418-20; McGavock Report, Doc. 63-1, Pg. ID 4631-37.) So, while McGavock did not use Plaintiff's standard rate in creating his hypothetical, he

still considered the relevant facts here. (*See id.*) This procedure is appropriate in creating a reasonable damages determination. *See Nat'l Rsch. Lab'ys v. Eppert Oil Co., Inc.*, 104 F. Supp. 2d 851, 863-66 (S.D. Ohio 2000). Thus, Plaintiff's argument fails to demonstrate that McGavock's opinions should be excluded.

Thus, Plaintiff's motion to exclude McGavock's testimony must be denied.

### c. VSE Manuals

Plaintiff next moves to exclude all expert and fact testimony about two VSE manuals that Defendant's counsel accessed from the internet. (*See* Motion to Exclude VSE Manuals, Doc. 87.) Plaintiff contends that Defendant was prohibited from accessing this material because it did not have a license. (*Id.* at Pg. ID 9732.)

Plaintiff first argues that reference to the manuals should be excluded because discovering where Defendant obtained these manuals sent them on a "wild goose chase." (Motion to Exclude VSE Manuals, Doc. 87-1, Pg. ID 9737-38.) Plaintiff also seeks costs associated with this aspect of discovery. (*Id.* at Pg. ID 9739.) But, Plaintiff provides no authority requiring the exclusion of evidence when a party exhausted resources in attempting to determine its source. (*See id.*) Nor does Plaintiff show any efforts by Defendant to intentionally deceive Plaintiff from discovering the source of these manuals. (*Id.*) Thus, this argument fails to show that exclusion is proper, and the Court will accordingly not award costs related to this pursuit.

Next, Plaintiff argues that reference to the manuals should be excluded because Defendant cannot authenticate the manuals. (Motion to Exclude VSE Manuals, Doc. 87-1, Pg. ID 9738-39.) To be sure, a party proposing evidence must provide enough proof for

16

a reasonable juror to determine authenticity. Fed. R. Evid. 901(a); *United States v. Jones*, 107 F.3d 1147, 1150 n.1 (6th Cir. 1997). That task can be accomplished through testimony of any individual who accessed the manuals through the internet. *See, e.g., United States v. Thomas*, 701 F. App'x. 414, 418-19 (6th Cir. 2017). Various witnesses, including Goldberg, David Buck, and Meric Overman, have accessed the manuals through the relevant website and could therefore speak to their authenticity. *See id.* (*See also* Overman Dep., Doc. 71, Pg. ID 8657; Buck Dep., Doc. 56, Pg. ID 2644; Goldberg Dep., Doc. 96, Pg. ID 11280.) As the manuals can be authenticated by several means, Plaintiff fails to show they are inadmissible.

Thus, Plaintiff's motion to exclude all expert and fact testimony from Defendant regarding the VSE manuals must be denied.

### d. Modified VM Source Code

Plaintiff lastly moves to bar Defendant from introducing Defendant's Modified VM Source Code or any related expert testimony. (*See* Motion to Exclude Source Code, Doc. 88.) Plaintiff argues that Defendant refused to make the Modified VM Source Code available to Plaintiff but then allowed Goldberg to use it in his report. (*Id.* at Pg. ID 9780-82.) According to Plaintiff, this alleged maneuvering violates the Federal Rules of Civil Procedure and the parties' Source Code Inspection Protocol. (*Id.*)

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 also outlines what parties must first disclose without a discovery request and what parties must supplement

17

during discovery. Fed. R. Civ. P. 26(a)(1)(A), (e)(1). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Further, Rule 34 provides a process for parties to request information within the scope of Rule 26(b), as well as a process for parties to object to such requests. Fed. R. Civ. P. 34(a), (b).

The inquiry thus becomes whether Defendant violated Rule 26(a) or (e). To begin, Defendant satisfied Rule 26(a) by identifying its license agreement with Seagull, Seagull's VM, its LIMS products, and related source code, as potentially relevant in its initial disclosures. (*See* Defendant's Initial Disclosures, Doc. 98-1, Pg. ID 11588); Fed. R. Civ. P. 26(a)(1)(A)(ii); *see also Hall v. Tacala, LLC*, No. 1:20-CV-203, 2021 WL 5154091, at *2 (E.D. Tenn. July 23, 2021). Plaintiff also does not identify any omission in Defendant's initial disclosures that would implicate supplemental disclosures under Rule 26(e). (*See* Motion to Exclude Modified VM Source Code, Doc. 88-1.) Thus, as Defendant has not violated Rule 26(a) or (e), exclusion is not proper under Rule 37.

Plaintiff still argues that exclusion is appropriate based on its efforts to obtain the Modified VM Source Code from Defendant. (*See* Motion to Exclude Modified VM Source Code, Doc. 88-1, Pg. ID 9780.) Plaintiff's argument is not well taken. Plaintiff made two requests for the Modified VM Source Code. (Plaintiff's First Request for Production, Doc. 88-3, Pg. ID 9800; Plaintiff's Email Request, Doc. 88-5, Pg. ID 9853.) Defendant objected, contending that such requests were overly burdensome. (Defendant's Responses to Plaintiff's First Request for Production, Doc. 88-4, Pg. ID 9818-19; Defendant Email

Response, Doc. 88-6, Pg. ID 9855.) Plaintiff never requested the code considered by Goldberg, even though Defendant submitted Goldberg's report by the deadline for expert reports and nearly two months before the close of discovery. (*See* 9/27/2022 Notation Order; Goldberg Report, Doc. 96-1, Pg. ID 11397.) Plaintiff also never presented this issue to the Court. (*See* 8/9/2022 Notation Order.) Nor did Plaintiff seek to reconcile its request with Defendant's objection or move to compel production of the Modified VM Source Code through the procedures outlined by the Source Code Inspection Protocol. (*See* Source Code Inspection Protocol, Doc. 39, Pg. ID 367-68.) Simply put, Plaintiff did not avail itself of the remedial measures provided under the Source Code Inspection Protocol and the Federal Rules of Civil Procedure to secure the Modified VM Source Code. So, the Court will not exclude it now. *See Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782-83 (6th Cir. 2003).

Plaintiff also fails to demonstrate that Defendant violated the parties' Source Code Inspection Protocol. The Protocol provided for a process by which a party could object to a request for source code. (*See* Source Code Inspection Protocol, Doc. 39, Pg. ID 367-68.) If one party objected to a request based on overbreadth, both parties could attempt to resolve the issue through a "meet and confer" process. (*Id.*) And, if the matter remained unresolved, the requesting party could move to compel the production of any withheld code. (*Id.*)

In line with this protocol, Defendant objected that Plaintiff's request was too broad but offered to export specific portions that Plaintiff's expert believed to be relevant. (Defendant's Email Response, Doc. 88-6, Pg. 9855.) At that point, the onus was on Plaintiff

19

to seek to compel the remaining code. (*See* Source Code Inspection Protocol, Doc. 39, Pg. ID 368.) The Court cannot identify any provision of the Source Code Inspection Protocol Defendant supposedly violated through this conduct. To the extent that Plaintiff challenges the efficacy of the "meet and confer" process outlined in the Protocol (*see* Plaintiff's Reply, Doc. 109, Pg. ID 12015), the Court is not inclined to deviate from the procedures agreed upon by the parties. For these reasons, Plaintiff fails to demonstrate that Defendant violated the parties' Source Code Inspection Protocol.

Thus, Plaintiff's request to exclude Defendant's Modified VM Source Code and any testimony related to it must be denied. The Court further finds that Defendant's requested award of costs is unwarranted.

\*        \*        \*

In summary, each of Plaintiff's motions to exclude evidence must be denied. The Court now proceeds to the parties' cross-motions for summary judgment.

## II. Summary Judgment

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court must grant summary judgment. Fed. R. Civ. P. 56(a). The Court is to view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "This standard does not change when the parties present cross-motions for summary judgment; [the Court] evaluate[s] each motion on its own merits." *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022).

The moving party has the burden to show that no genuine issue of material fact

exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A court need not search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). A "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

### a. Copyright Act

First, the Court considers Plaintiff's copyright infringement claim. (Compl., Doc. 1, ¶¶ 18-26.) Both parties move for summary judgment on this claim. (*See* Defendant's Motion for Summary Judgment, Doc. 83, Pg. ID 9357; Plaintiff's Motion for Summary Judgment, Doc. 92-1, Pg. ID 10120.) "To succeed on a copyright-infringement claim, a plaintiff must establish '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 627-28 (6th Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

In consideration of the first element, the Court must determine the copyright registration at issue. Plaintiff does not reference a copyright registration in its Complaint.

(*See* Compl., Doc. 1.) At the summary judgment stage, both parties request judgment on the copyright claim based on the '100 Registration. (*See* Plaintiff's Motion for Summary Judgment, Doc. 92-1, Pg. ID 10121; Defendant's Motion for Summary Judgment, Doc. 83, Pg. ID 9357.) Likewise, Plaintiff admits in its response to Defendant's Motion for Summary Judgment that its copyright infringement claim is based on the '100 Registration. (Plaintiff's Response to Defendant's Motion for Summary Judgment, Doc. 103-1, Pg. ID 11871 n. 3.) Plaintiff raises no other registrations as a basis for its copyright claim. (*See* Plaintiff's Motion for Summary Judgment, Doc. 92; Plaintiff's Response to Defendant's Motion for Summary Judgment, Doc. 103-1.) Thus, the Court will construe Plaintiff's copyright claim as one solely relating to the '100 Registration. *See Brashear v. Pacira Pharms., Inc.*, No. 1:21-CV-700, 2023 WL 3075403, at *2 (S.D. Ohio, Apr. 25, 2023) (limiting its analysis to the only theory of liability briefed by the parties).

The parties agree that Plaintiff has a valid interest in the '100 Registration. (*See* Defendant's Motion for Summary Judgment, Doc. 83, Pg. ID 9358-59.) So, the first element has been met, and the Court turns to the second element: whether there has been a "copying of constituent elements of the work that are original." *ECIMOS, LLC*, 971 F.3d at 627-28 (quotation omitted). The second element "tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004).

Not all copying is necessarily actionable under copyright law. *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). "[I]t is a constitutional requirement that a plaintiff bringing

an infringement claim must prove copying of constituent elements of the work that are original." *Id.* (quotation omitted). "Original . . . means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist*, 499 U.S. at 345. "Consequently, before comparing similarities between two works a court should first identify and eliminate those elements that are unoriginal and therefore unprotected." *Kohus*, 328 F.3d at 853. Important here, "[t]he copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b).

   With those considerations in mind, a plaintiff claiming copyright infringement of computer software must "identify and eliminate" unoriginal code. *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 518 (6th Cir. 2014) (quoting *Kohus*, 328 F.3d at 853). Code incorporated from an earlier registration into a later, copyrighted version is not protected by the later copyright. *See* 17 U.S.C. § 103(b); *see also SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 206, 213 (S.D.N.Y. 2009) (noting that the United States Copyright Office advises that any subsequent registration of a computer program covers only the new material added to the previously registered version). The task of separating protected code from unprotected code can be "a vexing one." *See RJ Control Consultants, Inc. v. Multiject, LLC*, No. 23-1591, 2024 WL 1432723, at *9 (6th Cir. 2024) (quotation omitted).

   That said, the first step in this process is for the plaintiff to identify and provide

the elements of its original code. *See R.C. Olmstead, Inc. v. CU Interface, LLC,* 606 F.3d 262, 275 (6th Cir. 2010). Plaintiff does not supply the Court with the code specific to the '100 Registration. (*See* Defendant's Motion for Summary Judgment, Doc. 83, Pg. ID 9357-58; Plaintiff's Response, Doc. 103, Pg. ID 11870-71.) Rather, Plaintiff maintains that Smalltalk Version 1.3's code is protected by the '100 Registration, relying on testimony from its expert, Georg Heeg. (Plaintiff's Motion for Summary Judgment, Doc. 92-1, Pg. ID 10121.) Plaintiff then argues that any later versions of VSE "contain preexisting, copyrighted source code from" Smalltalk Version 1.3. (*Id.*) Put another way, Plaintiff argues that Defendant's allegedly impermissible use of VSE Version 3.1 constituted infringement of VSE Version 1.3. (*Id.* at Pg. ID 10121-22.) Defendant counters that this analysis is insufficient as Plaintiff has failed to identify the original, protected lines of code in the '100 Registration. (Defendant's Reply, Doc. 104, Pg. ID 11923-24.) The Court finds Defendant's argument persuasive.

Plaintiff has not identified which lines of code covered by the '100 Registration are original. The parameters of the '100 Registration, as established by a single-page document in the record, show that it relates to Smalltalk Version 1.3 and that the basis of the registration claim is "New Matter: rev. & supplemental text." ('100 Registration, Doc. 84-8, Pg. ID 9541.) Plaintiff does not shed any further light on the registration, nor does it identify any code the registration covers. (*See* Plaintiff's Response to Summary Judgment, Doc. 103, Pg. ID 11870-71; Plaintiff's Motion for Summary Judgment, Doc. 92-1, Pg. ID 10121-22.) On top of that, Plaintiff has not provided the Court with a copy of the code for Version 1.3, nor does it identify what original portions of that code was later used in

24

Version 3.1. (*See id.*) In short, Plaintiff has not identified—and the Court cannot determine—the original code covered under the '100 Registration. This absence of identified original code is fatal to Plaintiff's claim. Without identified original code, the Court cannot determine which portions of the protected work Defendant allegedly copied. *See R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 275-76 (6th Cir. 2010).

Plaintiff points to *Williams Prods., Inc. v. Constr. Gaskets, Inc.*, No. 6-71616, 1977 WL 22704 (E.D. Mich. Dec. 2, 1977), to argue that it need not identify which portion of code from Version 1.3 was later used in Version 3.1. (Plaintiff's Response to Summary Judgment, Doc. 103, Pg. ID 11871.) But, in *Williams*, the plaintiff provided the court with copies of the copyrighted materials to compare with the allegedly copied work. *See Williams*, 1977 WL 22704, at *3-4. Plaintiff has not done the same here. Furthermore, because Plaintiff has not identified the original, protected code, the Court cannot engage in a substantial-similarity analysis. *See Automated Sols.*, 756 F.3d at 521; *R.C. Olmstead, Inc.*, 606 F.3d at 275-276. Because the Court cannot complete its analysis, Plaintiff cannot meet the second element of a copyright infringement claim. Therefore, Plaintiff's copyright infringement claim must fail.

In any event, even if Plaintiff filtered out unoriginal code, other doctrines stymie its copyright infringement claim. Plaintiff's claim implicates the "scenes a faire" and merger doctrines, which address the complexity of software and the difficulties in separating protected and unprotected code. *See RJ Control Consultants, Inc.*, 2024 WL 1432723, at *10. The "scenes a faire" doctrine "operates to bar certain otherwise creative expression from copyright protection," specifically as it relates to "standard or

25

commonplace" code. *Id.* (quotation omitted). Similarly, the merger doctrine provides that unprotected, functional code "merges" with protectible, creative code and renders the whole segment of code unprotectable by copyright. *Id.* at *9.

To overcome these obstacles, a plaintiff must identify the expression in software code and enable the Court to engage in a "line-by-line analysis" to determine what code retains protection. *RJ Control Consultants, Inc.*, 2024 WL 1432723, at *9. Plaintiff has not provided the code, let alone identified any expressive elements. Without this, the Court cannot undertake the required "line-by-line analysis" to determine which elements of the code are expressive, which elements are functional, and which elements are "standard or commonplace." *See id.* at *9-11.

For these reasons, Defendant is entitled to summary judgment in its favor on Plaintiff's copyright infringement claim.

### b. Misappropriation under OUTSA

Next, the Court turns to Plaintiff's claim for misappropriation of trade secrets under OUTSA. (Compl., Doc. 1, ¶¶ 27-31.) Both parties seek summary judgment as to this claim. (Defendant's Motion for Summary Judgment, Doc. 83, Pg. ID 9360; Plaintiff's Motion for Summary Judgment, Doc. 92-1, Pg. ID 10123.) Though the parties make several arguments, the Court need consider only one: Defendant's contention that Plaintiff's claim is untimely. (*See* Defendant's Motion for Summary Judgment, Doc. 83, Pg. ID 9363.) Before considering the substance of this argument, however, the Court must first determine the trade secret at issue.

Plaintiff identified the trade secret at issue in its Complaint as the "VSE Software."

26

(*See* Compl., Doc. 1, ¶¶ 8, 11-17, 28.) In its motion for summary judgment, Plaintiff reiterated that "the VSE Software as a whole" was a trade secret, but also identified seven "individual features" of the VSE Software as other trade secrets. (*See* Plaintiff's Motion for Partial Summary Judgment, Doc. 92-1, Pg. ID 10124-25.) The Court will not consider these new "individual features" as trade secrets related to this claim because Plaintiff did not include them in the Complaint. *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 787-89 (6th Cir. 2005) (noting that a plaintiff may not succeed at the summary judgment stage by relying on claims not pled in the complaint). The VSE Software is thus the only trade secret at issue. Having determined the relevant trade secret, the Court turns to the question of the claim's timeliness.

Under the OUTSA, "[a]n action for misappropriation shall be commenced within four years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Ohio Rev. Code § 1333.66. This rule "requires the owner of a trade secret to conduct a timely and reasonable investigation after learning of possible misappropriation." *Stolle Mach. Co. v. Ram Precision Indus.*, 605 F. App'x 473, 482 (6th Cir. 2015) (quotation omitted). Alleged "misappropriation is discoverable if the owner has knowledge of such facts as would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry." *Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 415 (6th Cir. 2024) (quotation omitted); *see also Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1300-01 (Ohio 1984).

Defendant maintains that Plaintiff learned of the alleged misappropriation in April 2014, so Plaintiff's claim should have been filed no later than April 2018.

27

(Defendant's Motion for Summary Judgment, Doc. 83, Pg. ID 9363.) In support of this argument, Defendant cites to email correspondence between Plaintiff executives, where they discussed a former employee and Defendant's alleged use of VSE. (*See id.*) In response, Plaintiff maintains that it conducted a reasonable investigation into the employee and ultimately determined that no foul play had occurred. (Plaintiff's Response to Defendant's Motion for Summary Judgment, Doc. 103, Pg. ID 11876-77.) Plaintiff further maintains that Defendant's alleged misappropriation could not have been reasonably discovered in April 2014. (*See id.*)

Based on correspondence, Defendant's alleged misuse of VSE should have reasonably been discovered in 2014. During that time, an individual left his employment with Plaintiff to work for Defendant. (Employee Emails, Doc. 53-5, Pg. ID 1511.) This prompted the discussion between several of Plaintiff's executives concerning Defendant's allegedly improper use of VSE Software. (*See id.* at Pg. ID 1509.) One executive explicitly noted that "[f]rom everything [he had] been able to find," Defendant was using VSE. (*Id.*) The executive also stated that he had "no record" of Defendant "being a VSE customer on a [Plaintiff] contract." (*Id.*) Another executive similarly noted that there was "no way" that Defendant had a proper VSE license. (*Id.*) These cues of misappropriation would have led a "fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry" into Defendant's alleged use of VSE Software. *See Adcor Indus., Inc. v. Bevcorp, LLC*, 252 F. App'x 55, 60-61 (6th Cir. 2007). Though Plaintiff would then investigate the former employee for potential misconduct (*see* Ayers Dep., Doc. 53, Pg. ID 1269-71), it did not investigate Defendant. For these reasons, the

Court concludes that the alleged misappropriation was discoverable in 2014. In turn, as Plaintiff's trade secret claim was not filed until January 2020, it is untimely.

The case cited by Plaintiff, *B&P Littleford, LLC v. Prescott Mach., LLC*, Nos. 20-1449/1451, 2021 WL 3732313 (6th Cir. Aug. 24, 2021), is readily distinguishable from this case. In *B&P Littleford*, the Sixth Circuit concluded that a question of fact remained as to whether the plaintiff conducted a reasonable investigation into misappropriation. *Id.* at *8. The Court there noted that the plaintiff tried to investigate the matter but was "stymied by a lack of documentation and its vendors' responses, and thereafter turned to the FBI for assistance." *Id.* No similar efforts took place here. Plaintiff limited its investigation to whether the departed employee violated the terms of his contract with Plaintiff. (Ayers Dep., Doc. 53, Pg. ID 1271.) Plaintiff did not investigate whether Defendant was improperly using VSE, despite explicit discussions that such conduct was occurring. (*See* Employee Email, Doc. 53-5, Pg. ID 1507-11.) Plaintiff presents no argument for its failure to take further investigative efforts into Defendant's alleged misuse of VSE.

Thus, Defendant's alleged misappropriation of the VSE Software was reasonably discoverable in 2014. Here, because Plaintiff did not bring its trade secrets claim until 2020, it is untimely. *See* Ohio Rev. Code § 1333.66. As a result, Defendant is entitled to summary judgment in its favor on this claim.

## CONCLUSION

For these reasons, the Court **ORDERS** the following:

1. Plaintiff's Motion to Exclude the Expert Testimony of Benjamin Goldberg (Doc. 85) is **DENIED**;

2. Plaintiff's Motion to Exclude the Expert Testimony of Daniel McGavock (Doc. 86) is **DENIED**;

3. Plaintiff's Motion in Limine to Exclude Defendant's Use of VSE Manuals (Doc. 87) is **DENIED**;

4. Plaintiff's Motion in Limine to Exclude Testimony and Evidence for Violating the Source Code Inspection Protocol (Doc. 88) is **DENIED**;

5. Defendant's Motion for Summary Judgment (Doc. 83) is **GRANTED;**

6. Plaintiff's Motion for Partial Summary Judgment (Doc. 92) is **DENIED**;

7. Summary judgment on Plaintiff's copyright infringement claim is **ENTERED** in favor of Defendant;

8. Summary judgment on Plaintiff's misappropriation of trade secrets claim is **ENTERED** in favor of Defendant; and

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND
